UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| LEISURE CAVIAR, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) Case No. 1:07-cv-304 |
| | ) |
| v. | ) Judge Mattice |
| | ) |
| UNITED STATES FISH AND | ) |
| WILDLIFE SERVICES, *et al.* | ) |
| | ) |
| *Defendants.* | ) |

**MEMORANDUM AND ORDER**

Before the Court is Defendants' United States Fish and Wildlife Service, Timothy J. Van Norman, and Jorge D. Villavicencio (hereinafter "Defendants") Motion to Dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Court Doc. 14, Defs. Mot. to Dismiss]. Plaintiffs Leisure Caviar and Bemka Corporation (hereinafter "Plaintiffs") initiated this action, which seeks damages and a writ of mandamus compelling Defendants to process and/or approve pending regulatory applications to sell and/or export caviar. Defendants seek to dismiss this action on jurisdictional grounds, arguing that Plaintiffs have failed to exhaust their administrative remedies as required by the Federal Tort Claims Act (hereinafter "FTCA).

For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Dismiss. Plaintiffs' claims against Defendants are hereby **DISMISSED** with **PREJUDICE**.

**I.     LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint over which the Court lacks subject matter jurisdiction. "Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of proving jurisdiction in

order to survive the motion." *Michigan S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Assn.*, 287 F.3d 568, 573 (6th Cir. 2002). Challenges to subject matter jurisdiction may be either facial or factual. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial challenge is a challenge to the sufficiency of the pleading. *Ritchie*, 15 F.3d at 598; *Ohio Nat'l*, 922 F.2d at 325. When reviewing a facial challenge, the Court must accept as true all well-pleaded factual allegations in the complaint and construe the complaint in the light most favorable to the nonmoving party. *Ritchie*, 15 F.3d at 598; *Ohio Nat'l*, 922 F.2d at 325.

Similarly, Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). To survive a motion to dismiss under 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face."[1] *Bell Atlantic*

---

[1] In *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1974 (2007), the United States Supreme Court altered the long-standing "no set of facts" standard for surviving a 12(b)(6) motion derived from *Conley v. Gibson*, 355 United States 41 (1957). The United States Court of Appeals for the Sixth Circuit has noted "[s]ignificant 'uncertainty as to the intended scope of the Court's decision [in Twombly ]' persists, however, particularly regarding its reach beyond the antitrust context." *Weisbarth v. Geauga Park District et al.*, 499 F.3d 538, 541 (6th Cir. 2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 2007 WL 1717803, at *11 (2d Cir. June 14, 2007) (applying the plausibility standard in the context of a motion to dismiss § 1983 claims based on qualified immunity). The Sixth Circuit further explained that "greater particularity in pleading, through showing 'plausible grounds' is required" in instances where an "action lends itself readily to abusive litigation." *Nat'l Bus. Dev. Servs., Inc. v. American Credit Educ. & Consulting, Inc.*, No. 08-1184, 2008 U.S. App. LEXIS 22773, at * 5-6 (6th Cir. Oct. 31, 2008) (holding that "[c]opyright infringement, like anti-trust actions, lends itself readily to abusive litigation, since the high cost of trying such a case can force a defendant who might otherwise be successful in trial to settle in order to avoid the time and expenditure of a resource intensive case. Therefore, greater particularity in pleading, through showing 'plausible grounds' is required."). However, the disposition of this case does not depend on the nuances of *Twombly*.

*v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The complaint must contain either "direct or inferential allegations respecting all the material elements to sustain a recovery . . . ." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (internal quotations and citations omitted). The Court must determine not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support his claims. *Scheuer v. Rhodes*, 416 United States 232, 236 (1974). In making this determination, the Court must construe the complaint in the light most favorable to plaintiff and accept as true all well-pleaded factual allegations. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). The Court need not accept as true mere legal conclusions or unwarranted factual inferences. *Id.*

## II. FACTS

Leisure Caviar is a wholesale paddlefish roe dealer that processes and distributes paddlefish roe to caviar exporters and distributors. (Court Doc. 7, Amend. Compl. ¶ 8.) Bemka is a buyer and exporter of paddlefish roe, which is used to make caviar. (*Id.* at ¶ 9.) In the instant case, Bemka purchased the paddlefish roe at issue from Leisure Caviar. (*Id.* at ¶ 11.) Paddlefish roe is a perishable good and, under ideal conditions, has a shelf-life of approximately 12-15 months. (*Id.* ¶ 18.) Bemka submitted, with Leisure Caviar's assistance, several permit applications to the U.S. Fish and Wildlife Service (hereinafter "FWS") for approval to sell and/or export paddlefish roe harvested in Tennessee, Kentucky, and Arkansas during the 2006-2007 season. (*Id.* at ¶ 12.) The 4,075.05 pounds of paddlefish roe are valued at $500,000.00. (*Id.*)

The United States is a signatory of the Convention on International Trade in

Endangered Species of Wild Fauna and Flora (hereinafter "CITES"). Article IV of the CITES provides that an export permit for paddlefish roe can be granted by an exporting county only when the regulatory authority of that exporting country is satisfied that the specimen was not obtained in contravention of its laws. CITES Part I(2)(b), 27 U.S.T. 1087. In the United States, the Endangered Species Act prohibits trade in violation of CITES and authorizes the Secretary of the Interior and the Secretary of Commerce to enforce the Endangered Species Act. 16 U.S.C. §§ 1531-44 (2008).

FWS administers the regulatory process that governs the sale, import, and export of paddlefish roe. (Amend. Compl. at ¶ 10.) The specific requirements for exporting paddlefish roe are set forth in 50 C.F.R. § 23.71. That regulation provides that an applicant must provide documentation to the FWS's Division of Management Authority, which demonstrates an unbroken chain of custody of the fish or fish products, through all of the intermediaries, to the applicant as the proposed United States exporter of record. 50 C.F.R. § 23.36. Additionally, FWS requires a scientific finding from its Division of Scientific Authority that the export of paddlefish roe harvested in the specific state or states of origin will not be detrimental to the survival of the species. (*Id.*) To facilitate this review, the application should match the fishing licence, seller's license and buyer's license to the caviar buyer's invoice form or harvest report. (Court Doc. 15, Defs.' Br. at 3-4.)

Bemka submitted the following applications to the FWS: (1) Application 143377, regarding 798.52 pounds of paddlefish roe submitted on December 15, 2006 (hereinafter the "143377 Application");(2) Application 145885, regarding 1,064.37 pounds of paddlefish roe submitted on January 24, 2007 (hereinafter the "145885 Application); (3) Application

150402, regarding 970.70 pounds of paddlefish roe, submitted on March 19, 2007 (hereinafter the "150402 Application"); (4) Application 151305, which was the resubmission of the 143377 Application, submitted on March 30, 2007 (hereinafter the "151305 Application"); and (5) Application 156377, regarding 1240.26 pounds of paddlefish roe, submitted on May 26, 2007 (hereinafter the "156377 Application"). (*Id.* at ¶ 12.)

The 143377 Application was received by FWS on December 16, 2006. (Defs.' Br. at 3.) On January 17, 2007, FWS notified Bemka of nine deficiencies in the permit application. (*Id.*) Pursuant to 50 C.F.R.§ 13.11(e), the agency provided Bemka 45 days to correct these deficiencies or the 143377 Application would be considered abandoned and administratively closed. (*Id.*) Bemka failed to respond to the identified deficiencies by March 6, 2007. (*Id.*) In accordance with established federal regulations, FWS considered this application abandoned. (*Id.*) The request for authorization to export the caviar covered by the 143377 Application was resubmitted as the 151305 Application. (*Id.*)

On January 23, 2007, the 145885 Application was received by the Division of Management Authority. (*Id.* at 3-4.) On February 23, 2007, Bemka was notified of 15 deficiencies that needed to be resolved before the application could be processed. (*Id.*) This application was administratively completed by April 2007. (*Id.*) In August 2007, FWS sent Application 145885 to the regulatory authorities in Tennessee, Arkansas, and Kentucky. (*Id.*) All three states noted discrepancies with certain portions of the harvest. (*Id.*) On December 28, 2007, FWS issued a partial approval for the documented portion of the Tennessee harvest and for the Arkansas harvest. (*Id.*) Subsequently, the FWS issued an export permit for the documented portion of the Kentucky harvest and for

portions of the Tennessee and Arkansas harvest that were not included in the previous approval. This second partial approved batch of roe was assigned a new permit number (No. 175428). As of February 29, 2008, FWS could not document (and did not approve for export) approximately 16 pounds of roe. (*Id.*) Bemka agreed to withdraw its request for export approval for this roe. (*Id.*)

On March 20, 2007, FWS received Application No. 150402. (*Id.* at 5.) The regulatory authority of Tennessee was unable to document 70.78 pounds of caviar. (*Id.*) On December 17, 2008. FWS issued a decision to partially approve Application No. 150402, denying approval for the 70.78 pounds of undocumented caviar. (*Id.*) On February 8, 2008, Bemka requested reconsideration of the partial denial of Application No. 150402, which included a January 30, 2008 e-mail from the Tennessee regulatory authority that the 70.78 pounds of caviar were cleared for export. (*Id.* at 5-6.) This request for reconsideration also sought approval for 12.71 pounds of caviar that came from Kentucky, but was submitted months after the harvest. (*Id.*) FWS never received documentation that demonstrates an unbroken chain of custody of the fish or fish products from the fisher, through all intermediaries, and to the applicant. (*Id.*) On April 17, 2008, it denied Bemka's request for reconsideration because it was unwilling to base its finding that the roe was legally acquired on harvest reports submitted months after the harvest, without explanation, or verifiable evidence. (*Id.*) FWS notified Bemka that it may appeal this decision to its Director, pursuant to 30 C.F.R. 13.29(e)..

On April 3, 2007, FWS received the 151305 Application, which was a resubmission of the 143377 Application. (*Id.* at 8-10.) FWS sent the completed application to the

-6-

regulatory authorities for Tennessee, Arkansas, and Kentucky for verification of the documentation. The Tennessee regulatory authority recommended denying 349.09 pounds of roe that was allegedly imported into Tennessee from Arkansas, but was not documented in accordance with state regulations. (*Id.*) The Kentucky regulatory authority could not document 22.86 pounds of roe reportedly harvested in that state. On December 17, 2007, FWS authorized the export of 426.57 pounds of caviar, denying approval for the balance of 371.95 pounds of roe. (*Id.*)

On February 8, 2008, Bemka requested reconsideration of the partial denial of the 151305 Application. (*Id.*) It provided FWS with correspondence from Tennessee and Kentucky regulatory officials that stated the previously undocumented caviar had been cleared for export and was harvested by legal commercial methods. (*Id.*) FWS never received documentation that demonstrates an unbroken chain of custody of the fish or fish products from the fisher, through all intermediaries, and to the applicant. (*Id.*) On April 17, 2008, it denied Bemka's request for reconsideration because it was unwilling to base its finding that the roe was legally acquired on harvest reports submitted months after the harvest, without explanation, or verifiable evidence. (*Id.*) FWS notified Bemka that it may appeal this decision to its Director, pursuant to 30 C.F.R. 13.29(e). This decision was re-mailed to Bemka on April 23, 2008.

On May 31, 2007, FWS received the 156377 Application. (*Id.* at 9-10.) In June 2007, FWS sent the completed application to the regulatory authorities in Tennessee and Arkansas for verification of the documentation. (*Id.*) The regulatory authority of Tennessee recommended denying the caviar 32.81 pounds of roe that was not legally

harvested and 69.04 pounds of roe that was allegedly imported into Tennessee from Arkansas, but which was not documented in accordance with state regulation. (*Id.*) On December 21, 2007, FWS authorized the export of 1138.59 pounds of caviar and denied approval for the balance of 101.87 pounds of roe. (*Id.*) On February 8, 2007, Bemka requested reconsideration of the partial denial of the 156377 Application. (*Id.*) It provided FWS with e-mail correspondence from a Tennessee regulatory official that stated the previously undocumented caviar had been cleared for export and was harvested by legal commercial methods. (*Id.*) FWS, however, never received documentation that demonstrates an unbroken chain of custody of the fish or fish products from the fisher, through all intermediaries, and to the applicant. (*Id.*) On April 17, 2008, it denied Bemka's request for reconsideration because it was unwilling to base its finding that the roe was legally acquired on harvest reports submitted months after the harvest, without explanation, or verifiable evidence. (*Id.*) FWS notified Bemka that it may appeal this decision to its Director, pursuant to 30 C.F.R. 13.29(e). This decision was re-mailed to Bemka on April 23, 2008.

Plaintiffs opted against exhausting any administrative remedies prior to initiating the instant case, which seeks damages associated with the spoilation of its product, lost profits and business opportunities, and loss of standing in the business community. Plaintiffs argue that requiring "compliance with exhaustion requirements would be contrary to the interests of justice in this case." (Court Doc. 21, Pls.' Resp. Br. 7.) They further allege that "Defendants have made clear that their intent to ignore Plaintiffs and their concerns at every step" of the administrative process that governs the hanging of CITES applications.

-8-

(*Id.* at 8.) Plaintiffs also assert that "the time it would take to exhaust administrative remedies, even if Defendants were to timely handle such matters, would necessarily result in the final spoilage of the roe covered by the permit applications." (*Id.* at 7-8.)

Defendants move to dismiss the instant case pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Defs.'s Br. at 12.) Defendants contend that dismissal is warranted because Plaintiffs have failed to exhaust the established administrative procedures governing CITES applications. *See* 28 U.S.C. § 2675(a).

## III. ANALYSIS

The Federal Tort Claims Act (hereinafter the "FTCA") provides that it is the exclusive remedy for torts caused by the negligent or wrongful conduct of government employees acting within the scope of their employment, and the United States is the sole appropriate defendant in such actions. *See* 28 U.S.C. § 2679(b); *see also Good v. Ohio Edison Co.,* 149 F.3d 413, 418 (6th Cir. 1998). Jurisdiction to hear tort claims against the United States is conferred solely by 28 U.S.C. § 1346(b)(1), and that jurisdiction is explicitly subject to the provisions of the FTCA. See *id. ("Subject to the provisions of chapter 171 of this title . . . the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . .")* (emphasis added).

The federal government "has waived its sovereign immunity to suits for tort actions under the FTCA, but only insofar as the plaintiff has exhausted his administrative

-9-

Case 1:07-cv-00304   Document 47   Filed 12/15/08   Page 9 of 19   PageID #: 395

remedies." *Blakely,* 276 F.3d at 864; *Lundstrum,* 954 F.2d at 1145.  Under § 2675(a), "an action shall not be instituted upon a claim against the United States for money damages. . .unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a)[2].  The exhaustion requirement is satisfied when the proper agency receives a "written notification of an incident, accompanied by a claim for money damages in a sum certain." *Lundstrum,* 954 F.2d at 1145.  As the Supreme Court noted in *McNeil v. United States:*

> "The most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process. Every premature filing of an action under the Federal Tort Claims Act (FTCA) imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions. Although the burden may be slight in an individual case, the statute governs the processing of a vast multitude of claims. The interest in orderly administration of this body of litigation is best served by adherence to the straight-forward statutory command. The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."

113 S. Ct. 1980, 1984 (1993).

The doctrine of sovereign immunity not only bars suits against the United States when the plaintiff seeks monetary damages but also extends to suits for money damages against officers and agents of the United States in their official capacities. *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 115-16 (6th Cir. 1988).  When a

---

[2]Section 2675(a) states in relevant part:

"An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."

federal employee acts within the scope of her employment and commits a tort, any relief for that tort must be sought against the Government under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (the "FTCA"). Whether an employee was acting within the scope of his employment is a question of law, not fact . . . ." *Singleton,* 277 F.3d at 870 (quoting *RMI,* 78 F.3d at 1143). The district court, however, must resolve any factual questions "necessary to its decision before entering its order." *Id.* (quoting *Arthur v. United States,* 45 F.3d 292, 296 (9th Cir. 1995)). "'The circumstances of [the waiver of sovereign immunity] must be scrupulously observed and not expanded by the courts.' " *Blakely v. United States*, 276 F.3d 853, 864 (6th Cir. 2002) quoting *Kokotix v. United States Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000).

### A. Plaintiffs Have Failed To Meet The Jurisdictional Requirements of the FTCA

Plaintiffs allege that Defendants "intentionally or negligently interfered with contractual and business relationships between Plaintiffs and purchasers of the paddlefish roe by creating unnecessary delays in the consideration of the CITES applications, which prevented the timely approval of the CITES applications at issue. Amend. Compl. ¶¶ 35, 36.

Plaintiffs' contractual interference claims are barred by the exception to the Court's jurisdiction under the FTCA. The FTCA excludes recovery for "any claim arising out of. . . misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h); see also, *Randall v. NASA*, 14 F.3d 1143, 1147 (6th Cir. 1994). This exception is broadly construed and deprives the courts of jurisdiction over these claims. *United States v. Neustadt*, 366 U.S. 696, 705-06 (1961); *Fitch v. United States*, 513 F.2d 1013, 1016 (6th

-11-

Cir. 1975). Because the Court lacks jurisdiction over the Plaintiffs' claims arising out of the alleged interference with its contractual rights, these claims will be **DISMISSED** with **PREJUDICE**.

Plaintiffs' amended complaint could also be construed as alleging that the government's actions were negligent. Such an allegation suggests a basis for liability that is distinct from Plaintiffs' contractual interference claims. While the contractual interference claims may not be actionable under the FTCA, the Court must also determine whether Plaintiffs' negligence claims are actionable. See *Appleton v. United States*, 69 F. Supp. 2d 83, 87-88 (D. D.C. 1999) (stating that the "court will not dismiss Mr. Appleton's negligence claim, however, without exploring whether or not ATF may have breached a duty of care separate from the duty not to interfere with contractual relations.").

Even if Plaintiffs had stated a cause of action for negligence against the United States, such a claim is barred under the Federal Torts Claims Act because Plaintiffs failed to exhaust administrative remedies as required by 28 U.S.C. § 2401(b). *Frick v. United States*, No. 89-1854, 1990 U.S. App. LEXIS 11001, at * 11 (6th Cir. June 28, 1990). Defendants have submitted a sworn declaration by Theresa M. Nallet, which states that there is no "record of an administrative tort claim filed by Bemka Corporation or Leisure Caviar." Court Doc. 15- 21, Nallet Decl. 1-2. Plaintiffs do not dispute that they failed to exhaust the prerequisite administrative remedies pursuant to CITES. *See* 50 C.F.R. § 13.11(e)[3]. Nonetheless, Plaintiffs contend that the Court is empowered excuse compliance

---

[3] 50 C.F.R. §13.11(e) provides, "*Abandoned or incomplete applications.* If we receive an incomplete or improperly executed application, or if you do not submit the proper fees, the issuing office will notify you of the deficiency. If you fail to supply the correct information to complete the application or to pay the required fees within 45 calendar days of the date of notification, we will consider the application

-12-

Case 1:07-cv-00304 Document 47 Filed 12/15/08 Page 12 of 19 PageID #: 398

with the exhaustion requirements of the FTCA due to the allegedly unique circumstances of the instant case. Pl.'s Br. at 7. Plaintiffs rely on three cases where a court purportedly found that a party may be excused from complying with the technical requirements of the FTCA. *Chekroun v. Small Bus. Admin*, 32 F. Supp. 2d 514, 515-516 (D. Conn. 1998); *Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508, 515 (6th Cir. 1974); *Forest v. United States*, 539 F. Supp. 171, 174 (D. Mont. 1982). As discussed *infra*, these cases do not support Plaintiffs' suggestion that the Court is empowered to ignore the FTCA's exhaustion requirements.

In *Forest v. United States*, the court excused "literal compliance with the administrative claim requirements" because it "would impair the rights of minor children." *Forest*, 539 F. Supp. at 174. The *Forest* holding, however, did not address the issue of whether Plaintiffs may be excused from exhausting the prerequisite administrative remedies pursuant to CITES. The holding in *Chekroun v. Small Business Administration* also fails to support Plaintiffs' argument that they should be excused from complying with the exhaustion requirements of the FTCA. The *Chekroun* court dismissed the Plaintiff's claims because the plaintiff had failed to exhaust his administrative remedies. *Chekroun*, 32 F. Supp. 2d at 515-516. The *Chekroun* court held that "there exist no 'unique or extenuating circumstances' which excuse exhaustion of administrative remedies before the SBA as to [Plaintiff's] tort claims." *Id.*

In *Executive Jet Aviation, Inc. v. United States*, the Sixth Circuit did not address the issue of whether Plaintiffs may be excused from exhausting the prerequisite administrative

---

abandoned. We will not refund any fees for an abandoned application."

-13-

remedies pursuant to CITES. The *Executive Jet Aviation* court held that "Executive Jet should be permitted to amend its administrative claim to show the insurers as joint claimants, and the insurers should be given an opportunity to join in this action as plaintiff" because "the administrative claim filed by Executive Jet served to toll the limitation period of 2401(b)." *Executive Jet Aviation*, 507 F.2d at 515. The Sixth Circuit also limited its holding to "the particular facts of this case." *Id.* at 517.

Plaintiffs do not cite any other authority in support of the proposition that a claimant who chooses to ignore the exhaustion requirements of the FTCA is entitled to jurisdiction in a federal action for damages. Indeed, the existent legal precedent in the Sixth Circuit points to the opposite conclusion. The Sixth Circuit has explained that the "filing of administrative claims is not merely an additional option that litigants may elect to pursue at their convenience. Rather, exhaustion is a necessary prerequisite to the invocation of federal jurisdiction that is intended to reduce the number of suits that ever actually proceed to the federal courts." *Shaffer v. A.O. Smith, Corp.*, No. 93-3764, 1994 U.S. App. LEXIS 26841, at * 4-10 (6th Cir. Sept. 21, 1994); see also *Pryor Oil v. United States*, 229 F. Supp. 2d 804, 810 (E.D. Tenn. 2008). (holding that the "requirement of exhaustion of administrative remedies is a jurisdictional prerequisite to filing the action under the Act."); *Rogers v. United States,* 675 F.2d 123, 124 (6th Cir. 1982) (courts "are not free to enlarge the consent to be sued which the government, through Congress, has limited") citing *Shelton v. United States*, 615 F.2d 713 (6th Cir. 1980).

The Court lacks subject matter jurisdiction over Plaintiffs' tort claims because Plaintiffs have failed to exhaust their administrative remedies as required by the Federal

-14-

Tort Claims Act. *See* 28 U.S.C. §2675(a); *Johnson v. United States*, 704 F.2d 1431, 1442 (9th Cir. 1983) ("Exhaustion of the claims procedures established under the Act is a prerequisite to the district court's jurisdiction."). Plaintiffs here invite the Court to make new law. The Court declines the invitation. Because the Court lacks jurisdiction to hear Plaintiffs' claims arising out of the Government's alleged negligence, these claims will be **DISMISSED** with **PREJUDICE**.

### B.     Plaintiffs Are Not Entitled To A Writ Of Mandamus

Plaintiffs also seek a writ of mandamus from the Court to compel FWS to comply with the applicable regulations governing the handling of CITES applications. *Id.* Mandamus jurisdiction is governed by 28 U.S.C. § 1361, which states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, mandamus relief is an "extraordinary remedy" that "will issue only to compel the performance of a 'clear nondiscretionary duty.' " *Pittston Coal Group v. Sebben*, 488 U.S.105, 121 (1988) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)); see also *In Re Parker*, 49 F.3d 204, 206 (6th Cir. 1995) (stating "[m]andamus is a drastic remedy, to be invoked only in extraordinary situations where [plaintiff] can show a clear and indisputable right to the relief sought.").

Specifically, mandamus relief is proper where the plaintiff can show that (1) the plaintiff has a "'clear and certain claim'" to the relief sought; (2) the defendant official has a "'nondiscretionary, ministerial' duty to act 'so plainly prescribed as to be free from doubt'"; and (3) "'no other adequate remedy [is] available.'" *Anjum v. Hansen*, No. 06-00319, 2007

U.S. Dist. LEXIS 22685 (S.D. Ohio Mar. 28, 2007) (quoting *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1988)); see also *Heckle*r, 466 U.S. at 616-17; *Marathon Oil Co. v. Lujan*, 937 F.2d 498, 500 (10th Cir. 1991) ("Mandamus relief is an appropriate remedy to compel an administrative agency to act where it has failed to perform a nondiscretionary, ministerial duty.").

"The existence of jurisdiction under section 1361 is inextricably bound with the merits of whether a writ of mandamus should issue; in order to establish either jurisdiction or entitlement to the writ, a court must find that a duty is owed to the plaintiff." *Maczko v. Joyce,* 814 F.2d 308, 310 (6th Cir. 1987). Accordingly, the Court will assume jurisdiction in the instant case for the limited purpose of determining whether there is a duty owed to Plaintiff. *See, e.g., Coal Operators & Assocs., Inc. v. Babbitt,* 291 F.3d 912, 915 (6th Cir. 2002).

"For there to be a duty owed to the plaintiff within the meaning of section 1361, there must be a mandatory or ministerial obligation. If the alleged duty is discretionary or directory, the duty is not owed. A duty is not owed unless the obligation is plainly defined and peremptory." *Maczko,* 814 F.2d at 310 (internal quotation marks and citations omitted); see also *Ryon v. O'Neill,* 894 F.2d 199, 205 (6th Cir. 1990) (explaining that the prerequisite that a duty be owed to the plaintiff has been read narrowly to require that the officer of the United States owe a "ministerial duty that is compelled by law.").

In the instant case, the Court is without jurisdiction to issue a writ of mandamus because the processing and issuance of an export permit is a discretionary, non-ministerial agency action, which is predicated upon the investigation and findings of the FWS. As the

-16-

court in *Prima v. Department of Interior* explained:

> Article IV, § (2)(a) of the Convention of International Trade in Endangered Species of World Fauna and Flora (CITES) states that an agency may allow exports only if it finds that such activity will not be detrimental to the survival of the species. Pursuant to 16 U.S.C. § 1537a(a), the United States Fish & Wildlife Service is granted the authority to carry out the functions of CITES consistent with its purposes. Further, 16 U.S.C. § 1537a(b) grants the Secretary of the Interior discretion to do all things necessary and appropriate to carry out these management functions, and 16 U.S.C. § 1537a(c) grants the agency the same discretion in making all scientific determinations. Thus, the agency is granted a wide berth of discretion in implementing CITES provisions. In making decisions, the agency must be guided by its duty to act consistently with the purposes of CITES.

*Prima v. Dep't of Interior*, No. 96-3578, 1998 U.S. Dist. LEXIS 2203, at * 4-6 (E.D. La. Feb. 19, 1998) (internal citations and quotations omitted). Even after a CITES permit application is denied, a court must give significant deference to decisions made by the FWS. *Prima*, 1998 U.S. Dist. LEXIS 2203, at * 12-13 ("When reviewing such technical matters within the Agency's area of expertise," the Court "must look at the decision not as the chemist, biologist or statistician that we are qualified neither by training nor experience to be, but as a reviewing court exercising its narrowly defined duty of holding agencies to certain minimal standards of rationality."). Because the nature and extent of the investigation and processing of CITES applications by the FWS are discretionary, Plaintiffs cannot demonstrate that the FWS owes them a clear, non-discretionary duty. Consequently, the Court does not have jurisdiction to issue a writ of mandamus. *Cummings v. Brown*, No. 1:06-cv-62, 2006 U.S. Dist. Lexis 96153, at * 5-6 (E.D. Tenn. Oct. 11, 2006).

### C. Plaintiffs' Motion To Strike

Plaintiffs further argue that the Court should strike all of the exhibits (except the

-17-

copies of Plaintiffs' requests for reconsideration) that were attached to Defendants' memorandum of law in support of its motion to dismiss.  Plaintiffs contend that a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure must be based solely on the pleadings.  They are mistaken.

It is well established that in considering a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the district court may look beyond the jurisdictional allegations in the complaint and consider whatever evidence is submitted.  *Humphrey v. U.S. Attorney's Office*, 279 Fed. App'x 328, 331 (6th Cir. May 15, 2008).  When reviewing certain Rule 12(b)(1) motions to dismiss, a trial "court has 'wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts.' " *Burlison v. United States*, No. 2:07-cv-2151, 2008 U.S. Dist. LEXIS 95159, at * 3 (W.D. Tenn. Nov. 20, 2008) citing  *Ohio Nat'l*, 922 F.2d at 325.   A factual challenge is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction."  *Ritchie*, 15 F.3d at 598.  When reviewing a factual challenge, no presumption of truthfulness applies to the factual allegations of the complaint, and the Court must weigh the conflicting evidence to determine whether subject matter jurisdiction exists.  *Id.*; *Ohio Nat'l*, 922 F.2d at 325; see also *Pryor Oil Co. v. United States*, 299 F. Supp. 2d at 807-808.  Accordingly, the Court will **DENY** Plaintiffs' motion to strike.

Case 1:07-cv-00304   Document 47   Filed 12/15/08   Page 18 of 19   PageID #: 404

**IV. CONCLUSION**

For the reasons explained above, Defendants Motion to Dismiss [Court Doc. No. 14] is **GRANTED**. Plaintiffs' motion to strike is **DENIED**. Plaintiffs' request for a writ of mandamus is also **DENIED**, and the amended complaint is **DISMISSED WITH PREJUDICE**. The costs of this action shall be taxed against the Plaintiffs.

The Clerk is directed to close the file in this case.

SO ORDERED this 15th day of December, 2008.

*/s/Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE
